Van Voorhis, J.
(dissenting). The record indicates, it seems to me, that optometrists are not better qualified than ophthalmic dispensers to fit corneal contact lenses. This statute seems to create an arbitrary distinction between them, and, in doing so, to run afoul of the protection of the Fourteenth Amendment of the United States Constitution against denial of the equal protection of the law. This is plainly an economic contest between optometrists and ophthalmic dispensers. If the presence of a physician be required whenever an ophthalmic dispenser fits a corneal contact lens, but not when the same thing is done by an optometrist, it gives to optometrists an overwhelming economic advantage.
The personal supervision of a physician is obtained in the fitting of corneal contact lenses in that no ophthalmic dispenser can fit them without first having sent the patient to an ophthalmologist to determine after personal examination whether the eyes of the patient are suited to contact lenses and, if they are, to make the prescription for the lenses. It is true that when subdivision 1 of section 7126 of the Education Law was enacted the only kind of contact lenses in use were of the scleral variety, which required the administration of drugs as well as the insertion of a mechanical support beneath the eyeball. For these reasons a physician had to be personally present at the time of the fitting of the contact lenses, and it was not enough for him to have made a prior personal examination of the patient. That was true of optometrists as well. Obviously now, even if a physician-ophthalmologist is required to be personally present when an ophthalmic dispenser fits a corneal contact lens, the “ personal supervision ” which he exercises will be different from that which was necessary in the scleral lens fittings, since the function to be performed is different. Surely the circumstance that only scleral lenses were in use when the statute was passed does not signify that only scleral lenses can be installed today. Neither can it mean that the supervision required is technically the same as when scleral lenses were applied.
“ The personal supervision of a physician ”, as those words are used in the statute, manifestly refers to whatever personal supervision is called for by the circumstances. The personal supervision of a physician cannot be dispensed with, even in the application of corneal contact lenses, but the kind of super *834 vision required, is different. I think that it comes within the statute .if the ophthalmologist personally supervises the patient in order to determine whether he or she is a fit subject for corneal contact lenses, as well as to supply the prescription.
The consequence has become that section 7126 of the Education Law denies the equal protection of the law, in the fitting of corneal contact lenses, if it be construed to require the personal attendance of an ophthalmologist while the lenses are being applied, in that in this regard it has no relation to the public health but operates simply for the economic advantage of optometrists. This is not a legitimate exercise of the police power (Loblaw, Inc., v. New York State Bd. of Pharmacy, 11 N Y 2d 102, and cases cited). This constitutional defect in section 7126 of the Education Law is obviated if in the fitting of corneal lenses it be construed to require the personal attendance of an ophthalmologist by way of prior examination to ascertain whether the patient is a proper subject to be fitted with corneal contact lenses, and to determine the prescription.
The orders appealed from should be reversed and the prayers of the petitions granted.
Orders affirmed.